[S. F. No. 8433. In Bank.—March 30, 1920.]

## THE PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA (a Corporation), Appellant, v. PACIFIC SURETY COMPANY (a Corporation), Respondent.

[1] Insurance Law—Liability Under Reinsurance Contract—Interpretation of Instrument.—Under a reinsurance contract providing that the liability of the reinsurer shall commence simultaneously with that of the insurer if reinsurance advices be sent by the latter within ten days after receipt at its home office of advice of the issuing of the policy or renewal receipt, and in case of a failure to send reinsurance advices under such circumstances, the liability of the reinsurer shall not commence until the advice is actually sent, the liability of the reinsurer comes into existence on the issuance of the policy, and the only contingency that can relieve it is the failure of the insurer to dispatch reinsurance advices after receipt at its home office of advice of the issuance of the policy.

[2] Id. — Failure to Dispatch Reinsurance Advice — Liability of Reinsurer.—Under such a reinsurance contract, the reinsurer is not absolved from responsibility by the failure of the insurer to dispatch reinsurance advice when such failure was without fault on the part of the insurer and due to advice received by the home office of the insurer that the policy had been issued in lieu of a previously issued policy.

[3] Id.—Action on Reinsurance Contract—Settlement of Claim—Right of Insurer.—Where power is given the insurer under a reinsurance contract of making settlements binding upon the reinsurer, the latter is not in a position, upon general demurrer, in an action by the insurer on the contract, to attack a settlement of a claim between the plaintiff and the insured.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Seawell, Judge. Reversed.

The facts are stated in the opinion of the court.

R. S. Gray for Appellant.

---

1. Liability of reinsurer, notes, 8 L. R. A. (N. S.) 847; 44 L. R. A. (N. S.) 318.

Denson, Cooley & Denson, Cooley & Lachmund and H. E. Cooley for Respondent.

LENNON, J.—This is an action for money claimed to be due under a reinsurance contract. The general demurrer to the amended complaint was sustained without leave to amend and plaintiff appeals from said judgment.

Plaintiff and defendant entered into a reinsurance contract whereby defendant reinsured the "second excess" of five thousand dollars on accident insurance policies written by the plaintiff where the principal sum exceeded ten thousand dollars. In other words, if the plaintiff issued one or more policies to one person, and the total insurance exclusive of accumulations amounted to twenty thousand dollars or over, plaintiff carried the first ten thousand dollars of the risk, another reinsuring company carried the risk for the next five thousand dollars, and defendant assumed the risk for the second excess of five thousand dollars. The companies were to share proportionately in any accumulations which should arise under these policies. There was a provision that plaintiff was to have the right to settle disputed claims and bind the defendant thereby. The Chicago office of the plaintiff in April, 1914, issued a policy of accident insurance for ten thousand dollars to Dr. Steere. The following June a second policy for the same amount was issued to said Dr. Steere and the advices received at plaintiff's home office in Los Angeles stated that this second policy was issued in lieu of the first policy. On July 13, 1914, Dr. Steere was murdered, and July 17th plaintiff received word that the widow of Dr. Steere claimed both policies were in force, this being the first knowledge on the part of plaintiff of the possibility of such claim being made. On the day following the receipt of this information plaintiff notified defendant of the issuance of the two policies and the claim that both were in force at the time of the death. The widow commenced suit against plaintiff for thirty thousand dollars; plaintiff concluded that under all the circumstances it was advisable to settle the claim and did so for seventeen thousand dollars. This suit is for the alleged proportionate liability of defendant under its contract.

The portions of the reinsurance contract which are of importance for the purposes of this case are as follows:

Article I. "4. Whenever the 'Pacific Mutual' has issued on one life several policies the reinsurance shall extend proportionately under each policy; and in event of a claim arising it shall be construed that the 'Reinsurance Company' has assumed a proportionate risk in each of such policies, and in each and every provision and condition of such policies."

Article II. "2. The liability of the 'Reinsurance Company' for each risk shall commence simultaneously with that of the 'Pacific Mutual,' provided only that the 'Pacific Mutual' shall dispatch the reinsurance advices to the office of the 'Reinsurance Company' within ten (10) days (Sundays and holidays excepted) after receipt at its home office in Los Angeles, California, of advice of the issuing of the policy or renewal receipt by the 'Pacific Mutual.'

"3. All liability of the 'Reinsurance Company' shall cease when the risk terminates under the respective policy or renewal. If the 'Pacific Mutual' shall neglect to advise the 'Reinsurance Company' within the above ten days, then the liability of the 'Reinsurance Company' in respect to the reinsurance so omitted to be advised shall commence from the moment of the dispatch by the 'Pacific Mutual' of such advice."

The sole question presented to the court for determination is one of the construction of the terms of a written contract, i. e., whether the reinsurance company is absolved from responsibility by the failure of the insuring company to dispatch reinsurance advices when such failure was without fault on the part of the insuring company and due to ignorance that any reinsurance had arisen. From a careful reading of the contract it is apparent that the precise contingency now presented was not in the minds of the parties at the time the contract was drawn and, consequently, was not provided for, namely, the case where a claim is brought within the reinsurance agreement without knowledge until after the death of the insured that the policy was within the agreement. It remains, therefore, to determine the general intent of the parties from the contract as a whole. As was said in *Pressed Steel Car Co.* v. *Eastern Ry. Co. of Minnesota,* 121 Fed. 609, 613, [57 C. C. A.

635, 639] : ''To the counsel of each of these parties this contract seems plain and unambiguous, and its meaning certain, and yet it has an entirely different signification to the representatives of each of these corporations. This fact, repeated perusals, and a careful study of the writing present very convincing evidence that its terms are not altogether clear, that they were well calculated to raise this controversy, and that they are susceptible of two constructions. It remains to determine which is the more natural, probable, and rational interpretation. There is no evidence in the record that either of the two interpretations urged upon our consideration would have deterred either of the parties from entering into the agreement. What they intended to stipulate, what they understood the contract to mean, and what they would have done if their interpretation of it had been different, can be deduced only from the contract itself, the situation of the parties, and the circumstances surrounding them when they made it.''

It is contended in support of the judgment that the contract plainly requires that the defendant should be promptly advised of the issuance of any policy by which it incurred a liability under its reinsurance agreement. This contention is made and based upon the theory that the provision in paragraph 3 of article II of the reinsurance agreement was inserted in the contract with this object in view and renders the giving of reinsurance advices a condition precedent to the liability of defendant. From this it is argued that if the plaintiff at its home office in Los Angeles received erroneous information from its Chicago office which operated to prevent it from giving to the defendant the reinsurance advices by virtue of which the defendant's liability would have commenced to run concurrently, with that of the plaintiff, it is the misfortune of the plaintiff, from which it alone must suffer.

We cannot accede to that interpretation of the contract. The contract plainly provides that the liability of the reinsurance company commences simultaneously with that of the Pacific Mutual Company and arises automatically without notification of any kind. The one proviso attached to the existence of the liability is that reinsurance advices must be sent by the insuring company within ten days

"after receipt at its home office in Los Angeles, California, of advice of the issuing of the policy or renewal receipt." In case of a failure to send reinsurance advices under those circumstances, and only in case of such a failure, the liability of the reinsurance company does not commence until the advice is actually sent. [1] The liability of the reinsurance company comes into existence, then, on the issuance of the policy by the insuring company, and the only contingency that can relieve the reinsurance company is the failure of the insurance company to dispatch reinsurance advices after receipt at its home office of advice of the issuance of the policy. Clearly, the advice of the "issuing of the policy" within ten days after the receipt of which plaintiff is to send reinsurance advices can only mean advice of the issuing of such a policy as the parties had in contemplation, that is, one showing, either by itself or in connection with one or more others, the existence of such "reinsurance." Any other interpretation would be unreasonable, for a requirement that "reinsurance advices" be sent after the receipt of advices of the issuance of *any* policy would be purposeless, inasmuch as "reinsurance advices" can only be sent where a policy has been issued upon which reinsurance has arisen, and it is only with "reinsurance" that the contract deals.

[2] When, therefore, plaintiff receives word that a second policy is not within the agreement, for the reason that it is issued in lieu of the first, no occasion has arisen for sending reinsurance advices. If it later turns out that a claim is presented within the reinsurance agreement by reason of both policies being in force at the same time, according to the contract the liability of the reinsurance company arose when the second policy was issued and the only contingency which could have absolved it from liability has not arisen, namely, neglect on the part of the insuring company to send reinsurance advices after receipt of the advice of the issuance of the policy, for the insuring company has never received any advice of the issuance of a policy upon which reinsurance has arisen. It will be noted that the contract provides that "if the Pacific Mutual shall neglect to advise the 'Reinsurance Company' within the . . . ten days" after receipt at its home office in Los Angeles of advice of the issuance of the policy, the liability

of the reinsurance company shall not commence until the actual moment of the dispatch of the reinsurance advices. If the Pacific Mutual has never been advised at its home office of the issuance of a policy within the reinsurance agreement, there is no time from which the ten day period began to run against the Pacific Mutual, and, consequently, nothing to prevent the liability of the reinsurance company from arising and continuing in existence, from the time of the issuance of the policy upon which the claim is being made.

While it is true that the contract shows that it was intended that the defendant was to be promptly advised of the issuance of any policy by which it incurred a liability under its reinsurance agreement, there was nothing in the contract limiting its liability only to cases where it had been so notified; the only limitation on liability was in the case of neglect by plaintiff to send such notification within ten days after receipt of advice of the issuance of the policy, and, where plaintiff received no advice of the issuance of a policy within the contract, it was under no obligation to send reinsurance advices. This was the only protection afforded defendant, and, in view of the fact that the contract seems to have been carefully drawn to cover a most important branch of the business of plaintiff and defendant, the court is not at liberty to imply an obligation in favor of defendant that it should only be liable when notified by plaintiff, irrespective of the knowledge of plaintiff, that the policy was one on which reinsurance had arisen. Such an obligation is one so absolute in nature that, if intended to be imposed on plaintiff, it should have been clearly set forth in the contract. As the contract stands, not only is no such intention expressed, but a contrary intent appears, namely, that defendant is to be bound unless plaintiff fails to forward information received by it at its home office that reinsurance has arisen. Of course, any claim of fraud or negligence would place a different aspect upon the case. The facts are now being considered only for their sufficiency upon general demurrer.

[3] The defendant is not in a position, upon general demurrer, to attack the settlement of the claim between plaintiff and the widow of the insured, in view of the

power given plaintiff by the contract of making settlements binding upon defendant.

The complaint does not fail to state a cause of action under the contract and the demurrer should have been overruled.

The judgment is reversed.

Wilbur, J., Angellotti, C. J., Lawlor, J., and Olney, J., concurred.

Mr. Justice Shaw, deeming himself disqualified, did **not** participate.