[Civ. No. 4600. First Appellate District, Division One.—November 21, 1924.]

THE PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA (a Corporation), Appellant, v. PACIFIC SURETY COMPANY (a Corporation), Respondent.

[1] INSURANCE—COMPROMISE OF CLAIMS UNDER ACCIDENT POLICIES—ACTION TO RECOVER PRO RATA LIABILITY—CONSTRUCTION OF REINSURANCE CONTRACT—DEFENSE.—In an action to recover defendant's *pro rata* liability under a reinsurance contract after a compromise by plaintiff of claims arising under two accident insurance policies issued by plaintiff, the reinsurance contract providing that

---

1. Reinsurance and remedies of the parties thereunder, note, 45 Am. St. Rep. 442. See, also, 14 R. C. L. 1448; 14 Cal. Jur. 646.

plaintiff alone shall settle all claims, and such settlements shall be binding on the defendant in proportion to its participation, whether the settlement be in full or in compromise, while the defendant was not entitled to urge in its defense any matters occurring at the time of or subsequent to the date of death of the insured, such as the plaintiff as the original insurer might have invoked against the validity of the beneficiary's claim, nevertheless, defendant had the right to insist that plaintiff establish the fact, as a condition precedent to its right of recovery, that both policies issued by plaintiff were "valid up to the time of the occurrence of the disaster out of which the claim for liability on the part of both arose," or that such fact had been previously adjudicated by a court of competent jurisdiction.

[2] ID.—INSURANCE POLICY — CONTRACTS — CONSTRUCTION.—Policies of insurance are written contracts between parties and are governed by the same rules which are applicable to contracts generally.

[3] ID. — LIMITATION OF AMOUNT OF INSURANCE — ACCIDENT POLICY — CONSTRUCTION—CANCELLATION.—Where the second policy issued by plaintiff provided that the maximum limit of insurance under its policy was $10,000 principal sum, with $50 per week indemnity, etc., and that accident or health insurance "in excess of such maximum limit shall not be valid, and premiums paid for such excess shall, on written demand at company's home office, be returned," and such policy further contained, in the schedule of such warranties which was made a part of the policy, an agreement whereby the insured agreed "that all other accident, health and disease insurance on my life in this company shall be terminated at the time hereof, except as follows: No exception," the plaintiff's liability, in case of the death of the insured from accident, was restricted to the principal sum of $10,000 and accumulations, and the issuance of said second policy was intended to and in fact did operate as a cancellation of all previously issued policies, and the defendant was not liable under its reinsurance contract by which defendant reinsured plaintiff for the second excess of $5,000 of accident insurance policies written by the plaintiff where the principal sum exceeded $10,000.

[4] ID.—DEATH OF INSURED—POLICIES IN FORCE—EVIDENCE—NONSUIT. In such action, accepting as true all of the evidence offered in support of plaintiff's case, such evidence was insufficient, as a matter of law, to establish the fact that both policies were in force at the time of the death of the insured, and upon that ground the trial court was justified in granting the motion for a nonsuit.

(1) 33 C. J., p. 57, sec. 733.   (2) 32 C. J., p. 1147, sec. 257.   (3) 33 C. J., p. 63, sec. 753.   (4) 33 C. J., p. 63, sec. 753.

2.  See 14 R. C. L. 839; 14 Cal. Jur. 413.
3.  See 14 R. C. L. 1135, 1450; 14 Cal. Jur. 511, 649.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. S. Gray for Appellant.

Cooley & Gallagher for Respondent.

KNIGHT, J.—The plaintiff Pacific Mutual Life Insurance Company brought this action to recover from the defendant Pacific Surety Company the sum of $4,992.58, claimed to be due under a contract of reinsurance. A general demurrer to the amended complaint was sustained without leave to amend, and from the judgment entered therein plaintiff appealed and said judgment was reversed. (*Pacific Mutual Life Ins. Co.* v. *Pacific Surety Co.*, 182 Cal. 555 [189 Pac. 273].). Thereafter defendant answered and the cause proceeded to trial before the court sitting with a jury. A judgment of nonsuit was entered and plaintiff has again appealed.

The nature of the contract of reinsurance was explained upon the former appeal as follows: "Plaintiff and defendant entered into a contract of reinsurance whereby defendant reinsured the 'second excess' of $5,000 of accident insurance policies written by the plaintiff where the principal sum exceeded $10,000. In other words, if the plaintiff issued one or more policies to one person and the total insurance exclusive of accumulations amounted to $20,000 or over, plaintiff carried the first $10,000 of the risk, another reinsuring company carried the risk for the next $5,000 and the defendant assumed the risk for the second excess of $5,000. The companies were to share proportionately in any accumulations which should arise under the policies."

The following facts are not disputed. In April, 1914, subsequent to the date of the execution of the said contract, the Chicago agency of the plaintiff issued a policy of accident insurance, numbered 1095700, in the principal sum of $10,000 to one Dr. Harold H. Steere of that city. On June 5, 1914, said agency issued a second policy, numbered

1095733, to the same party for a like amount.  On July 13, 1914, Dr. Steere was murdered and four days later the beneficiary named in said policies, claiming both policies were in force, presented a demand against plaintiff in Chicago for the payment of the principal sum thereof and accumulations, amounting to the sum of $30,000 and upon plaintiff's refusal to pay the same brought suit on each policy for the full amount in the municipal court of Chicago.  Those suits were afterward compromised by plaintiff for the sum of $17,000 and dismissal of the suits followed.

The clause of the reinsurance contract authorizing plaintiff to compromise claims for loss reads as follows:

"2. The 'Pacific Mutual' alone shall settle all claims, and such settlements shall be binding on the 'Reinsurance Company' in proportion to its participation, whether the settlement be in full or in compromise.  The claim papers and other evidence and vouchers accepted as sufficient by the 'Pacific Mutual' shall likewise be taken by the 'Reinsurance Company' and copies of all such papers duly certified by an officer of the 'Pacific Mutual' shall be furnished to the 'Reinsurance Company' accompanying their claim under the reinsurance."  Said contract also contained the following provision: "3. All liability of the 'Reinsurance Company' shall cease when the risk terminates under the respective policy or renewal. . . . "

In due time plaintiff demanded that defendant pay its alleged proportionate liability under said contract of reinsurance arising out of the settlement of the Steere claims, which defendant refused to do, upon the ground that neither of said policies came within the terms of said reinsurance contract.  Plaintiff then commenced this suit to recover the same.

[1] The first question presented for determination is whether or not, in view of the clause in the contract above quoted, the right of the appellant to settle all claims was unlimited and conclusive, so far as respondent was concerned.  The respondent contends that it was not, and that "all defenses that were available to plaintiff against the claims and actions on the Steere policies are equally available to the defendant in this action."  In this respect it is asserted, first, that both Steere policies were not in force at

the time of the death of the insured for the reason that the second policy was issued in lieu of the first one; secondly, that there was a breach of warranties on the part of the insured in giving false answers to the questions set forth in said warranties which rendered the policy void *ab initio;* that the claims of the beneficiary were invalid because of the failure to comply with certain requirements of the policies relative to proof of death.

Appellant's position is that the provisions of said contract "are so broad and sweeping as to necessarily include even claims where the very heart of the dispute is as to the validity of one or more policies *ab initio* or termination of one by the other," etc.

The rule stated in the case of *Royal Ins. Co.* v. *Caledonian Ins. Co.,* 182 Cal. 219 [187 Pac. 748], is doubtless decisive of the proposition submitted. The policy of reinsurance there was indorsed "this policy is subject to the same risks, valuations, conditions and adjustments as or may be taken by the reinsured, and loss if any thereunder is payable *pro rata* with the reinsured and at the same time and place." Acting under the authority conferred by that clause the reinsured compromised a claim for loss and subsequently sought to recover from the reinsurer the latter's proportionate share of said settlement and the question arose as to the right of the reinsurer to object to the settlement made by the reinsured. In discussing the purpose such special agreements of reinsurance were intended to subserve, Mr. Justice Richards, whose opinion, while sitting as a member of the district court of appeal, was adopted by the supreme court, cited and quoted from the case of *New York etc. Ins. Co.* v. *Protection Ins. Co.,* 18 Fed. Cas. 160, No. 10,216, wherein it was pointed out that, in the absence of such a clause as the one above quoted, the reinsurers were entitled, as against the reinsured, to make the same defenses which might be asserted by the original insurer against the insured; that the consequence was that no voluntary payment by the original insurer was binding upon the reinsurer and that the reinsured was protected only by a *bona fide* judgment against them for the loss. "It was to avoid this inconvenience and delay," says the opinion in that case, "as well as peril that the French policies of reinsurance, as mentioned by Emerigon and Pothier, usually contained a clause

allowing and authorizing the original insurers to make, *bona fide,* a voluntary settlement and adjustment of the loss which shall be binding upon the reinsurers (citing cases). This, of course, puts the whole matter within the exercise of the sound discretion of the party reassured whether to contest or admit the claim of the first assured." Mr. Justice Richards then cites and quotes from the case of *Insurance Co. of New York* v. *Associated Mfg. Co. of New York,* 70 App. Div. 69 [74 N. Y. Supp. 1038], affirmed in 174 N. Y. 541 [66 N. E. 1110], which involved an adjustment clause similar to the one then under consideration in *Royal Ins. Co.* v. *Caledonian Ins. Co., supra,* in which the New York court held:

"In the absence, therefore, of fraud or bad faith on the part of the plaintiff, the defendant by the terms of its policy . . . is in no position to object to the mode of adjustment as made by the plaintiff. *When, therefore, the plaintiff had ascertained by a proper investigation* that it was legally liable to pay a certain amount to the railroad company under its contract, and such payment had been made, the defendant could not question the validity of the plaintiff's act unless it alleged and proved that the plaintiff had acted fraudulently or collusively to its injury." Continuing, however, Mr. Justice Richards declares this exception to the rule: "The rule as thus stated should, of course, be limited to cases where, as in the instant case, no question arises as to the liability of the original insurer and the reinsurer upon their respective policies up to the occurrence of the disaster out of which their respective liabilities are claimed to have arisen, and wherein the matter presented for adjustment is a disputed state of facts as to the origin or extent of the disaster. This will differentiate the case at bar from those cases upon which the appellant herein most strongly relies, as, for example, the case of *Firemen's Fund Ins. Co.* v. *Aachen etc. Ins. Co.,* 2 Cal. App. 690 [84 Pac. 253]," citing also the case of *Commonwealth Ins. Co.* v. *Globe etc. Ins. Co.,* 35 Pa. St. 475. And the learned justice concludes the discussion on this point as follows: "The difference between this line of cases and the case at bar is obvious, and in conclusion upon this branch of the case we are of the opinion that under the foregoing clause of the

reinsurance contract, where both contracts of insurance were admittedly valid up to the time of the occurrence of the disaster out of which the claims of liability on the part of both arose, and where the only question requiring adjustment was the disputed fact as to whether or not a portion of the building in which the insured property was located had fallen before the fire, and where the original insurer had in good faith investigated such disputed state of facts, and after such investigation had made an adjustment of the loss, the reinsurer is bound by such adjustment, and may not reopen that question in an action against it for its *pro rata* liability for the loss upon its policy of reinsurance.'' It would therefore appear that while a reinsuring company operating under a contract containing an adjustment clause such as the one above quoted may not avail itself of defenses based upon matters arising on or after the occurrence of the disaster which created the liability, it may attack the settlement for fraud or collusion, or it may deny its liability entirely upon the ground that a valid contract of insurance was not in existence between the insured and reinsured at the time the alleged liability thereunder occurred. In other words, before the reinsured may recover from the reinsurer it must show that the settlement made by it was grounded upon a contract of insurance valid in law up to and at the time of the disaster out of which such liability arose. While the adjustment clauses contained in the policies of reinsurance considered in the case of *Royal Ins. Co.* v. *Caledonian Ins. Co., supra*, and *Insurance Co. of New York* v. *Associated Mfg. Co. of New York, supra*, are worded somewhat differently from the one contained in the contract under consideration in the instant case, they are similar in substance and effect, and no good reason appears why the rule prescribed for measuring contracts of reinsurance between insurance companies should not be held to apply to similar contracts between accident insurance companies. It must, therefore, be held in the instant case that, while the respondent was not entitled to urge in its defense any matters occurring at the time of or subsequent to the date of death of the insured, such as the appellant as the original insurer might have invoked against the validity of the beneficiary's claim, nevertheless, it had the right to insist that appellant

establish the fact, as a condition precedent to its right of recovery, that both policies were "valid up to the time of the occurrence of the disaster out of which the claim for liability on the part of both arose," or that such fact had been previously adjudicated by a court of competent jurisdiction. Admittedly no such adjudication was had; consequently, if the evidence offered by appellant in support of its case in chief failed to prove such fact, or if from such evidence the trial court was justified in declaring as a matter of law that only one of said policies was in force at the time of Steere's death, the judgment of nonsuit must be sustained. Indeed, the burden of proving said fact was assumed by appellant when it filed its amended complaint, for in the sixth paragraph thereof it is alleged that respondent was liable under said contract of reinsurance in the matter of the Steere policies "if said policies were both in force and effect at the time of the death of Dr. Harold H. Steere. . . . "

Turning, then, to the evidence to ascertain if both policies were in force at that time the record discloses that the second policy contained the following limitations of liability:

"Article 31. The Company's maximum limit of insurance under its Accident and Health Policies and Tickets granted on the life of any one person shall be $10,000 principal sum, with $50 per week indemnity, except as enlarged by doubling or increasing clauses. Accident or Health Insurance in excess of such maximum limit shall not be valid, and premiums paid for such excess shall, on written demand at Company's Home office, be returned." It also contained, in the schedule of warranties which is made a part of the policy, an agreement whereby the insured agreed "that all other accident, health and disease insurance on my life in this company shall be terminated at the time hereof, except as follows: No exception." The evidence does not show that those clauses were ever modified or waived by appellant, and no such claim is made. They are plain in their terms and unambiguous in their meaning. [2] "Policies of insurance are written contracts between parties and are governed by the same rules which are applicable to contracts generally." (*Bassi* v. *Springfield Fire Ins. Co.*, 57 Cal. App. 707 [208 Pac. 154].) [3] Giving those clauses effect, as must be done, the conclusion is inevitable that appellant's

liability, in case of the death of the insured from accident, was restricted to the principal sum of $10,000 and accumulations, and that the issuance of the second policy was intended to and in fact did operate as a cancellation of all previously issued policies. In either event the respondent was not liable under said reinsurance contract. Furthermore, the written declarations of appellant's officers and the verified pleadings filed by them in the Chicago suits dispel all doubt as to the understanding of appellant regarding the invalidity of the first policy.

The evidence shows in this particular that although the contract of reinsurance provided that "the liability of the 'Reinsurance Company' for each risk shall commence simultaneously with that of the 'Pacific Mutual,' provided only that the 'Pacific Mutual' shall dispatch the reinsurance advices to the office of the 'Reinsurance Company' within ten (10) days (Sundays and holidays excepted) after receipt at its home office in Los Angeles, California, of advice of the issuing of the policy or renewal receipts by the 'Pacific Mutual,' " no attempt was made by appellant to dispatch to respondent advices of the issuance of either of the Steere policies until after the death of the insured, for the reason that the amount of the insurance called for by the first policy was not sufficient in amount to invoke respondent's liability under said reinsurance contract and it was advised by its Chicago agency that the second policy had been issued as a substitute for and in cancellation of the first one. Those advices consisted in part of the records transmitted by the Chicago agency of appellant to the home office, one of which purported to be "an exact copy of an entry made in the schedule of warranties contained in policy issued," and embodied the following recital: "Kind of policy . . . A–56 . . . issued in lieu of 1095700." Another record consisted of the "transmittal sheet" for the week ending June 11, 1914, used by the Chicago agency for the purpose of "forwarding applications, policy records and renewals, and other vouchers, to Accident Department" and which set forth the fact of the issuance of the second Steere policy under the head: "Issued in lieu of canceled policies." The first advice received by the home office to the contrary arrived after the death of Dr. Steere on July 17, 1914, when its Chicago

adjuster wired that Dr. Steere had been murdered and that "memo on application of latter policy to effect written in lieu of first policy was error assured estate has both policies and apparently paid both premiums to broker have you reinsurance risk." Replying, by telegram and letter, the vice-president of the appellant company stated that reinsurance had not been secured and called attention to the adjuster to the transmitted records above mentioned and to two provisions of the policy, the first declaring a maximum limitation of $10,000 on accident and health policies of the company, and the second a warranty wherein the assured agreed "that all other accident, health and disease insurance on my life in this company shall terminate at the date hereof except as follows," followed by the words "no exceptions." Said reply of the vice-president further stated: "These records went through our office and reinsurance was not secured because of the plain statement that the last policy was issued in place of the first and that the agreement was made that all other insurance should terminate at the date of the last policy issued. Both applications are the same in every particular with the exception of the date making it almost certain that one policy was issued in lieu of the other. Reinsurance could have been secured on this risk had the application not shown that one policy was issued in place of the other. . . . We are very much surprised that the statement that indorsement . . . issued in lieu of first policy is in error. Surely our company has a right to limit its risks to $10,000 and require the General Agent to do so and the solicitor to do so, and all clerks to do so. We do not feel that if any loss is sustained, and we do not think any will be beyond the $15,000, that the same should fall upon the company. Morrison & Miller are company's agents authorized to issue policies within the limit laid down for their guidance. We have feared this very thing and here it is. Now, the question with this office is, who ought to pay the bill. Certainly every reasonable care has been taken at this office to prevent it and if these two policies are in force there is abundant evidence that the Chicago office did not exercise ordinary care."

On the following day, July 18, 1914, appellant, for the first time apprised respondent of the issuance of the two

Steere policies. By the same letter respondent was advised of the fact of the death of the assured and of the demand made by the beneficiary for the payment of both policies. Said letter further stated that the second Steere policy provided a maximum limit of insurance of $10,000, and that the schedule of warranties contained an agreement canceling all prior insurance; furthermore, that "the understanding at this office was that the second policy was issued in lieu of the first" and "our company maintains that only one of these policies is in force—that the risk was $10,000 accumulated to $15,000 and not $20,000 accumulated to $30,000." The verified answers of the appellant, filed in the two actions brought by the beneficiary in Chicago, were also to the same effect. On July 25, 1914, respondent acknowledged appellant's letter of July 18, 1914, and returned to appellant the inclosures sent therein, saying: "We are returning the same to you herewith as they are not covered by our reinsurance. It would appear that you have waited until a loss was reported to you before forwarding cession and you will please consider this letter as a definite declination to recognize reinsurance on the two policies mentioned above or either of them." After further correspondence between the parties, the contents of which is not important, appellant, on October 26, 1914, mailed respondent a check for $53.46 "in payment of the July 1914 accounts," which was the amount of respondent's portion of the premium paid on the second Steere policy. Respondent refused to accept the same and returned the check. Apparently nothing further transpired between appellant and respondent concerning the Steere matter until April 27, 1916, when appellant informed respondent of the settlement of the claim and made demand upon respondent for the latter's alleged portion thereof. In this respect appellant stated: "Great influence was brought to bear upon us to require payment for this large amount, and the insurance department of Illinois was appealed to and took part in the controversy. Suit was filed against us, but the case never came to trial. A compromise of the case was reached by the payment of $17,000 after payment of $2,970.38 in expenses." But in its amended complaint herein appellant alleged that it first "denied and disputed said claim because it was then advised and believed and has always

been advised and believed that said policy No. 1095733 was issued in lieu of the said policy No. 1095700 . . . but later plaintiff became convinced and was advised and believed that in the trials of said suits before juries . . . the result was likely to be adverse to this plaintiff . . . and . . . in any event, and especially if this plaintiff found it necessary to appeal in said suits the costs and expenses that would be necessarily incurred by this plaintiff in defending said suits would be very great and probably nothing would be gained for either the plaintiff or the defendant herein, and therefore . . . believing compromise and settlement of said suits and claim would be for the best interest of all parties concerned, including the defendant here, this plaintiff compromised and settled said suits and said claim for the sum of $17,000.'' There was much other evidence adduced upon cross-examination of appellant's witnesses pertaining to the motives which prompted appellant to settle said suits, but inasmuch as the decision on appeal depends upon the nullity of the first policy rather than upon the *bona fides* of the settlement made by appellant, it becomes unnecessary to relate that evidence or discuss that feature of the case.

[4] Accepting as true all of the evidence offered in support of appellant's case, we are satisfied that it was and is insufficient, as a matter of law, to establish the fact that both policies were in force at the time of the death of the insured, and upon that ground we believe the trial court was justified in granting the motion for a nonsuit.

In passing upon the question of the right of the respondent to attack the settlement made by appellant we have not overlooked that part of the decision of the supreme court rendered upon the former appeal, wherein it was said: ''The defendant is not in a position, upon *general demurrer*, to attack the settlement of the claim between plaintiff and the widow of the insured, in view of the power given plaintiff by the contract of making settlements binding upon defendant.'' (Emphasis ours.) Surely, in view of the rule announced in *Royal Ins. Co.* v. *Caledonian Ins. Co., supra,* the language quoted cannot be interpreted to mean, as appellant contends, that the defendant would not be in a position *on trial upon the merits* to attack such settlements because such interpretation would even exclude the defense

of fraud, which, of course, may be asserted by a defendant in an action of this nature.

Judgment affirmed.

St. Sure, J., and Cabaniss, P. J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 20, 1924, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 20, 1925.

Myers, C. J., dissented.