[No. B184684. Second Dist., Div. Three. Mar. 21, 2007.]

ZENITH INSURANCE COMPANY, Plaintiff and Appellant, v. COZEN O'CONNOR, Defendant and Respondent.

## COUNSEL

Irell & Manella, Richard J. McNeil and Wendy A. Sugg for Plaintiff and Appellant.

Hinshaw & Culbertson, Ronald E. Mallen, Paul E. Vallone and Wendy Wen Yun Chang for Defendant and Respondent.

## OPINION

**CROSKEY, J.**—In this action for professional negligence, the appellant, Zenith Insurance Company (Zenith), had entered into a contract of reinsurance with Royal Insurance Company (Royal) pursuant to which it had reinsured 100 percent of Royal's exposure under certain liability policies. After claims were asserted against Royal's insured, Royal retained the respondent law firm of Cozen O'Connor (Cozen) to provide legal services with respect to the defense of such claims. Ultimately, Zenith filed this action for professional negligence against Cozen, alleging that, under the circumstances, an attorney-client relationship existed between Cozen and Zenith based on (1) an implied in fact contract and (2) the theory that Zenith was an intended beneficiary of the legal services to be performed by Cozen pursuant to its retention agreement with Royal. Cozen successfully demurred to Zenith's claim and the cause of action against it was dismissed with prejudice.

As we concur with the trial court that Cozen, who was hired by Royal, owed no duty of care to Zenith, we will affirm. The fact that Zenith had reinsured 100 percent of Royal's potential policy liability, would thereby benefit (or suffer) from the performance of Cozen's legal services, and had multiple communications with Cozen (who was obligated as Royal's counsel to keep the reinsurer informed of the status of claim adjustment and defense) does not provide a basis for the establishment of an attorney-client relationship; moreover, Zenith makes no claim that there was any express agreement with Cozen regarding such a relationship.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

On May 1, 1975, Royal entered into a reinsurance agreement with Pacific Basin Insurance Company (Pacific Basin) pursuant to which it reinsured four general liability policies issued by Royal to the Dillingham Corporation and its subsidiaries for the fiscal years 1975–1976 and 1976–1977. Subsequently, on July 29, 1992, the reinsurance obligations of Pacific Basin were assumed by Zenith and, on August 31, 1992, Royal and Zenith entered into a novation agreement whereby Royal released Pacific Basin and accepted Zenith as the reinsurer of the four Dillingham policies. Zenith, at least for purposes of this appeal, does not dispute its obligations as the reinsurer under the original reinsurance agreement.[2]

The reinsurance agreement provided, among other things:

1. Zenith reinsured 100 percent of the limits of Royal's underlying policies issued to Dillingham;

2. Zenith's liability "shall fully follow" that of Royal;

3. Royal had the right and duty to investigate, settle or defend suits against its insureds;

4. Royal had the right and duty, *in its sole discretion*, to make such settlements *as it deemed expedient* in accordance with the provisions of the underlying policies; and

---

[1] As this case comes to us on demurrer, the facts we recite are those set forth in Zenith's fourth amended complaint, the operative pleading herein, including the relevant provisions of the reinsurance agreement which was incorporated into such pleading.

[2] For this reason, and in the interests of convenience, clarity and simplicity, we will hereafter discuss the provisions and obligations of the reinsurance agreement as though Zenith had been the original party thereto.

5. Zenith did not have the right to associate in the defense or settlement of claims made under the reinsured Royal policies.

In October of 1989, one of Dillingham's wholly owned subsidiaries, Foss Maritime (Foss), notified Royal of a claim by the United States Environmental Protection Agency which alleged that Foss was liable for the environmental cleanup of the Middle Waterway of Commencement Bay in Tacoma, Washington (the Middle Waterway Claim). After Zenith had assumed the obligations as Royal's reinsurer, Royal advised Zenith that there were some 22 other insurers on the risk represented by the Middle Waterway Claim.

In 1996, Royal engaged Cozen to provide legal advice and services with regard to the Middle Waterway Claim as well as other Foss pollution claims in the State of Washington. In 2002, Zenith contacted Cozen regarding Royal's failure to seek contribution from other insurers who, as Zenith understood it, were also on the risk. Cozen advised Zenith that because of certain conflicts of interest, Cozen was not able to pursue any of the potential contribution claims. Zenith then demanded that Royal retain other counsel to pursue those claims and Royal did so.

Royal ultimately agreed to pay Foss approximately $2.8 million in settlement of the Middle Waterway Claim, plus another $1 million in defense costs and in settlement of claims arising from two other Foss sites. Royal thereafter demanded reimbursement from Zenith pursuant to the terms of the reinsurance agreement. As of the date that Zenith filed its initial complaint in this matter, it had paid only about $500,000 on Royal's demand.

On July 28, 2004, Zenith filed this action against Royal for breach of contract and declaratory relief. In essence, Zenith alleged that Royal had mishandled the adjustment of the several Foss claims and, specifically, had failed to timely pursue contribution and indemnification claims against other insurers. As a result of Royal's failure, recovery on such contribution and indemnification claims had been lost and Zenith, as the reinsurer of 100 percent of Royal's policy obligations has been thereby damaged. Cozen was not named as a defendant in this pleading.

Zenith thereafter amended its complaint to add a third cause of action against Cozen for professional negligence. Cozen demurred, arguing that there were insufficient allegations to demonstrate any attorney-client relationship between the law firm and Zenith. The trial court sustained the demurrer with leave to amend and directed Zenith to attach a copy of the reinsurance agreement to any future pleadings. Two other pleading efforts by Zenith had

similar results. Zenith was repeatedly unable to allege sufficient facts to demonstrate that Cozen had any duty of care owed to Zenith or that any attorney-client relationship existed between them. Finally, on March 28, 2005, Zenith filed its fourth amended complaint, the operative pleading herein.

Zenith concedes that there was never any *express* agreement with Cozen that legal services were to be provided to Zenith. The basis for Zenith's conclusion that an attorney-client relationship existed is apparently founded on the following summarized allegations:

1. In 2002, Zenith demanded that Cozen pursue contribution claims against other insurers and that Cozen refused on the ground that it was ethically unable to do so as conflicts of interest existed. When Zenith demanded that Royal engage other counsel to pursue such claims, however, Royal did so;[3]

2. From time to time, Cozen had discussions with Zenith concerning the pending litigation and settlement strategy respecting the several Foss claims. On one occasion, Cozen stated to Zenith that a particular settlement that Royal proposed to make with respect to two of the Foss claims was in "Zenith's best interests." On another occasion, one of Royal's representatives assured Zenith that "Cozen is protecting all of our interests." Cozen was not a party to this latter statement;

3. Cozen was aware at all times that Zenith had reinsured 100 percent of Royal's policy liability under the Dillingham policies;

4. As a result of these circumstances, Zenith alleged that it had "reasonably relied on Cozen to evaluate, investigate and prosecute claims for contribution or indemnification or other claims to reduce Royal's, and thus Zenith's, financial liability";

---

[3] In a separate allegation (see par. 25 of the fourth amended complaint), Zenith generally alleged that "Zenith also gave instructions and direction to Cozen regarding its handling of the Foss claims. Cozen provided substantive responses to these instructions and direction." Zenith, despite multiple opportunities to do so, has not provided anything more specific as to such "instructions and direction" or as to the exact nature of Cozen's "substantive responses." We therefore must assume that such allegation is simply a reference (previously alleged in par. 17 of the fourth amended complaint) to Zenith's directions to Cozen to pursue contribution claims. Cozen's "substantive response" was a refusal to do so for ethical reasons. If that assumption is correct as to this allegation, then Zenith's pleading is truly disingenuous; if Zenith had different or additional specific instances of direction or instruction to Cozen in mind, it should have directly alleged them.

5. Zenith also alleged that "[a]t no time did Cozen ever say to Zenith that it was *not* representing Zenith. Nor did Cozen ever say to Zenith that Zenith should seek separate counsel respecting any matters discussed between Cozen and Zenith as to the Foss claims"; and

6. Cozen knew that Zenith was not only 100 percent liable on the Foss claim, but also that Zenith was 100 percent potentially responsible for Cozen's legal fees. As of the date of the fourth amended complaint, Zenith had paid "a substantial portion of Cozen's fees respecting their representation."[4]

Based on these general allegations, Zenith asserted, in its third cause of action,[5] that (1) an *implied* contract existed between Cozen and Zenith establishing an attorney-client relationship and (2) the agreement between Royal and Cozen whereby Cozen was to provide legal advice and services with respect to the claims against Foss "was specifically intended to affect and/or benefit Zenith in that Cozen was aware of Zenith's 100 percent financial interest in the Foss claims and was also aware of Royal's obligations to Zenith under . . . the Reinsurance Agreement."

Thus, Zenith concludes, in its allegations against Cozen, "separate and apart from the implied contract between Zenith and Cozen that Zenith was a third party beneficiary of the written agreement between Royal and Cozen." Zenith then goes on to allege that Cozen had failed to act within the standard of care and breached that duty of care by the manner in which it (1) permitted the existence of or maintained relationships that created conflicts of interest, (2) failed to act in Zenith's best interests, (3) failed to handle the Foss claims in a proper manner, (4) failed to properly, and in a timely manner, pursue claims against other insurers and indemnitors and (5) failed to timely and adequately disclose its conflicts of interest to Royal and Zenith.

Cozen again filed a demurrer and the trial court sustained it *without* leave to amend. After examining Zenith's allegations as summarized above, the trial court concluded that there were not sufficient facts alleged to demonstrate the creation or existence of an attorney-client relationship and that Cozen did not owe a duty of care to Zenith. The trial court held that the client

---

[4] Zenith does not allege that it paid such fees *directly* to Cozen and the provisions of the reinsurance agreement make it clear that Zenith was obligated to pay funds to Royal's reimbursement account that were to be utilized for defense costs incurred with respect to the Foss claims. Such costs would include fees paid to Cozen *by Royal* pursuant to their attorney engagement agreement.

[5] The third cause of action is the only one directed at Cozen and is the only cause of action that is the subject of this appeal.

was Royal and the fact that Cozen may have been aware that Zenith had 100 percent reinsurance liability and was providing the funds out of which Cozen's fees were paid or that there were multiple communications between Zenith and Cozen or that Zenith had a "subjective" belief that Cozen was also its attorney was not sufficient, as a matter of law, to demonstrate the existence of an attorney-client relationship. Whatever benefits Zenith might receive from Cozen's performance for services for Royal were purely *incidental* to Royal's engagement of Cozen and did not establish that Zenith was an *intended* beneficiary of the legal services performed by Cozen.

The trial court entered a judgment of dismissal as to Cozen on May 26, 2005, dismissing Zenith's third cause of action with prejudice.[6] Zenith has filed this timely appeal.

## ISSUE PRESENTED

The critical issue presented by this case arises from the relationship that exists between a reinsurer and the ceding insurer. The question is raised as to the nature and extent of the duty if any, owed to the reinsurer by counsel retained by the ceding insurer to protect the interests of the insured under the underlying policy. As we explain, we conclude that, in the absence of an express agreement between the reinsurer and retained counsel, the general circumstances relied upon here by Zenith are not sufficient to establish an attorney-client relationship or any duty of care running to the reinsurer.

## DISCUSSION

### 1. Standard of Review

We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and facts of which judicial notice can be taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*)

### 2. The Nature of Reinsurance Relationship

 Insurance Code section 620 defines reinsurance as a "contract . . . by which an insurer procures a third person to insure him against loss or liability

---

[6] Zenith's action against Royal, as alleged in the first two counts of the fourth amended complaint, is still pending.

by reason of such original insurance." A reinsurance contract is presumed to be a contract of indemnity for the benefit of the ceding insurance company, not the party insured under that insurer's policy. (*Ascherman v. General Reinsurance Corp.* (1986) 183 Cal.App.3d 307, 311 [228 Cal.Rptr. 1].) "Reinsurance is a special form of insurance obtained by insurance companies to help spread the burden of indemnification. A reinsurance company typically contracts with an insurance company to cover a specified portion of the insurance company's obligation to indemnify a policyholder in the event of a valid claim. This excess insurance, as it is called, enables the insurance companies to write more policies than their reserves would otherwise sustain since [it] guarantees the ability to pay a part of all claims. *The reinsurance contract is not with the insured/policyholder.* When a valid claim is made, the insurance company pays the first level insured, and the reinsurance company pays the insurance company. The reinsurance company's obligation is to the insurance company, and the insurance company vis-à-vis the reinsurer is thus the insured, or more appropriately the 'reinsured.' " (*Excess & Cas. Reinsurance Ass'n. v. Insurance Com'r, etc.* (9th Cir. 1981) 656 F.2d 491, 492, italics added, fn omitted.)

Reinsurance does not alter the ceding insurer's relationship with its policyholder. It still remains responsible for defending, settling and paying covered claims against the insured. The ceding insurer pays the *full* amount of the claim, including the costs of defense, and then seeks reimbursement from the reinsurer for the reinsured portion of the claim. The reinsurer's liability is limited to the terms of its agreement with the ceding insurer. (*Ascherman v. General Reinsurance Corp., supra,* 183 Cal.App.3d at p. 312.) In this case, Royal expressly retained the *exclusive* power to investigate, defend and settle. any claim on such terms as it, *in its discretion,* deemed expedient. Under such provision, Zenith had no right or authority to participate therein. Its obligation to Royal was one of reimbursement.

It is well settled that where, as here, a reinsurance contract fails to provide otherwise, a reinsurer has no control over claims settlement. Consequently, if the ceding insurer decides to settle and pay a claim, the reinsurer cannot raise coverage defenses to avoid paying its share of the loss. Absent fraud or collusion with the insured, the reinsurer must "follow the fortunes" of the ceding insurer on any claims under the policy . . . and most reinsurance contracts, including the one before us, expressly so provide. (*Pacific M. L. Ins. Co. v. Pacific S. Co.* (1924) 69 Cal.App. 730, 735 [232 P. 728]; *Nat. American Ins. Co. of Cal. v. Underwriters* (9th Cir. 1996) 93 F.3d 529, 536–537.)

### 3. *Zenith Cannot Claim Third Party Beneficiary Status*

In its brief, Zenith argues that "regardless of the existence of an attorney-client relationship between the parties, California law provides that an attorney owes a duty of care to an intended beneficiary of the attorney's services." In this argument, Zenith does *not* rely on any claim of a direct express or implied contractual relationship.

■ An essential predicate for establishing an attorney's duty of care under an "intended beneficiary" theory is that *both* the attorney, Cozen, and the client, Royal, must have intended Zenith to be a beneficiary of legal services Cozen was to render. (*B.L.M. v. Sabo & Deitsch* (1997) 55 Cal.App.4th 823, 832 [64 Cal.Rptr.2d 335].) Even if the lawyer's representation could *incidentally* benefit the claimant, that does not sufficiently satisfy this predicate. (*Goldberg v. Frye* (1990) 217 Cal.App.3d 1258, 1268 [266 Cal.Rptr. 483]; *Mason v. Levy & Van Bourg* (1978) 77 Cal.App.3d 60, 67–68 [143 Cal.Rptr. 389].) This rule governs the analysis, even if the attorney knows that third parties will be affected by his representation of his client. Without more, such knowledge is not sufficient to create a duty of care. (*Burger v. Pond* (1990) 224 Cal.App.3d 597, 604–606 [273 Cal.Rptr. 709].)

Zenith's factual allegations never materially changed through four prior versions of the complaint. Royal, not Zenith, hired Cozen. Cozen was retained to advise Royal regarding its coverage obligations and to avoid potential bad faith liability of Royal to its insured. Obviously, any advice given Royal by Cozen to settle or resolve a claim would be given in that context and such advice might not necessarily be in Zenith's best interests. In resolving the claims against Foss, the interests of Royal and Zenith were not identical. Indeed, given Royal's obligations under the policy, including duties to defend and indemnify Dillingham and its subsidiaries, and its exclusive and discretionary control over how those duties would be discharged, those interests were potentially adverse. Royal, but not Zenith, would be exposed to potential bad faith liability for the unjustified failure to fully discharge all of the obligations owed under the policy. Thus, Cozen could not ethically represent both Royal and Zenith in these matters. In such circumstance, it would be impossible to conclude that either Royal or Cozen ever *intended* to confer upon Zenith beneficiary status of Cozen's legal services performed for Royal.

■ The clear absence of this mutual intent requirement is critical, indeed dispositive, in the context presented. An attorney's undertaking should be the result of a conscious decision, so that the consequences of a duty to a third person can be considered and the undertaking declined if the risk of conflicts

or financial· exposure is too great. Here, there is no allegation that Cozen agreed· or intended to benefit Zenith.

Cozen thus cannot be held to be under a duty to protect the interests of Zenith, a nonclient, where, as here, the nonclient's interests were, at the very least, potentially adverse to those of the client. This rule stems from salutary public policy considerations holding that an adverse party cannot be the intended beneficiary of the attorney's services provided for his client, because any other rule would eradicate the attorney's undivided, fiduciary duty of loyalty owed to his client. (*Fox v. Pollack* (1986) 181 Cal.App.3d 954, 961 [226 Cal.Rptr. 532] ["an attorney has no duty to protect the interests of an adverse party [citation] for the·obvious reasons that the adverse party is not the intended beneficiary of the attorney's services, and that the attorney's undivided loyalty belongs to the client"].)

The existence of such a conflict of interest precludes implication of third party beneficiary status. (*Burger v. Pond, supra*, 224 Cal.App.3d at pp. 604–606; *Fox v. Pollack, supra*, 181 Cal.App.3d at p. 961.) The circumstances before us, as reflected in Zenith's own allegations (including the provisions of the reinsurance agreement), demonstrate the existence of this dispositive conflict.

■ Nor does Zenith's general allegation that it "paid" Cozen's fees change that conclusion. The reinsurance agreement obligated Zenith to *reimburse* Royal for all indemnity and claims expenses, which necessarily included any legal fees that Royal was required to pay to Cozen. Thus, Zenith did not "pay" Cozen, but simply reimbursed Royal. Moreover, the mere payment of attorneys' fees does not necessarily establish an attorney-client relationship (*Hecht v. Superior Court* (1987) 192 Cal.App.3d 560, 565 [237 Cal.Rptr. 528], citing *Lasky, Haas, Cohler & Munter v. Superior Court* (1985) 172 Cal.App.3d 264, 285 [218 Cal.Rptr. 205]). We agree with Royal's argument that if the rule were otherwise every reinsurer would *per force* be the client of the ceding insurer's lawyer. Such a result would be inappropriate for all of the reasons already discussed.

■ Finally, the fact that Cozen had multiple communications with Zenith provides no support to its argument. As a reinsurer, Zenith was statutorily entitled to information regarding claim settlement and adjustment. Royal, as the ceding insurer, was required by Insurance Code section 622[7] to communicate to Zenith all the knowledge and information that Royal possessed with

---

[7] Insurance Code section 622 provides as follows: "Where an insurer obtains reinsurance, he must communicate all the representations of the original insured, and also all the knowledge and information he possesses, whether previously or subsequently acquired, which are material to the risk."

respect to any of Royal's reinsured liability. Cozen, as Royal's retained counsel, was doing no more than discharging on Royal's behalf that statutory obligation. The *fact* of such communication can neither destroy an applicable privilege (Ins. Code, § 622), nor *create* an attorney-client relationship. (*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1618, fn. 19 [56 Cal.Rptr.2d 341].)

### 4. There Was No Implied Agreement Establishing an Attorney-client Relationship Between Zenith and Cozen

Zenith, as an alternative to its third party beneficiary theory, argues that an attorney-client relationship arose from an *"implied"* contract between Zenith and Cozen. As already noted, Zenith concedes that its claim against Cozen is not based on any express attorney-client engagement agreement. Many of the principles we have discussed above in rejecting Zenith's third party beneficiary argument are also relevant to its implied contract theory.

■ In our view, Zenith did not allege the predicate facts necessary to establish such an implied contract between it and Cozen. Specifically, Civil Code section 1621 delineates the requirements for an implied contract: "An implied contract is one, the existence and terms of which are manifested by conduct." "An implied contract ' ". . . in no less degree than an express contract, must be founded upon an ascertained agreement of the parties to perform it, the substantial difference between the two being the mere mode of proof by which they are to be respectively established." ' [Citation.] . . . Although an implied in fact contract may be inferred from the 'conduct, situation or mutual relation of the parties, the very heart of this kind of agreement is an *intent* to promise.' [Citation.]" (*Friedman v. Friedman* (1993) 20 Cal.App.4th 876, 887 [24 Cal.Rptr.2d 892], italics added; see also *Truck Ins. Exch. v. Amoco Corp.* (1995) 35 Cal.App.4th 814, 824–825 [41 Cal.Rptr.2d 551].)

■ California law is settled that a client's subjective belief that an attorney-client relationship exists, standing alone, cannot create such a relationship, or a duty of care owed by the attorney to that plaintiff. (*Fox v. Pollack, supra*, 181 Cal.App.3d at p. 959.) This is because a plaintiff cannot unilaterally establish an attorney-client relationship, and its hindsight "beliefs" that such a relationship existed are thus legally irrelevant. (*Ibid.*) Instead, it is the intent and conduct of the parties that control the question as to whether an attorney-client relationship has been created. (*Hecht v. Superior Court, supra*, 192 Cal.App.3d at pp. 565–566.)

As the trial court recognized, the context of this case is a commercial arrangement between a ceding insurer and a reinsurer. The reinsurer had no contractual or legal obligations to Royal's insured. It had no involvement in Royal's selection of Cozen or its direction of Cozen, nor any right to participate in the settlement, adjustment or defense of any claims, even though it would ultimately be responsible for paying them. Zenith, as reinsurer, had the right to claims files, legal opinions and access to Royal's agents. Thus, allegations describing the contacts and communications necessary to ensure that Zenith received that information could not establish an undertaking by Cozen to represent Zenith.

Moreover, as we have already discussed above, the allegations of Zenith's fourth amended complaint provide very little factual specificity as to the number, nature and character of the communications between it and Cozen and upon which it seems to base its belief that an attorney-client relationship existed. When Zenith demanded that Cozen initiate legal proceedings for contribution or indemnification against other insurers or indemnitors, Cozen refused. Such an exchange hardly provides any basis whatever for Zenith to conclude that Cozen was acting as its attorney. This conclusion is confirmed by Zenith itself. Its response to this rejection was to demand of Royal that *it* hire *other* counsel to undertake the task which, according to Zenith's allegations, Royal did.

The only other specific communications that are alleged relate to the conduct of settlement activity by Royal with respect to certain of the claims asserted against Foss. As we have already emphasized, under Insurance Code section 622, Zenith had an absolute right to such information. Cozen's commentary that a particular proposed settlement agreement would also serve the interests of Zenith could, at most, be characterized as the opinion of counsel that the settlement's terms, in resolving a *particular* claim against Royal, also favorably disposed of one that Zenith would ultimately have to pay. It hardly could provide any *reasonable* basis for Zenith to conclude or "believe" that Cozen was acting as *its* counsel. Every other allegation put forward by Zenith, despite multiple pleading opportunities, is totally general and subjective. This, as the trial court finally concluded, is simply not enough. Just as Zenith's subjective "belief" that it was Cozen's client, and Zenith's allegation that it "paid" Cozen's bills (because it reimbursed Royal), did not create an attorney-client relationship between Cozen and Zenith, it is also true that Cozen's communications created no such a relationship.

## *DISPOSITION*

The judgment of the trial court is affirmed. Cozen shall recover its costs on appeal.

Klein, P. J., and Aldrich, J., concurred.