NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 26 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ASPEX EYEWEAR, INC.,

Plaintiff - Appellant,

v.

VISION SERVICE PLAN,

Defendant - Appellee.

No. 10-16232

D.C. No. 2:10-cv-00632-JAM-GGH

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted July 16, 2010
San Francisco, California

Before: HUG and M. SMITH, Circuit Judges, and TODD, Senior District Judge.[**]

Plaintiff-Appellant Aspex Eyewear, Inc. (Aspex) appeals the district court's

denial of its motion for a preliminary injunction against Defendant-Appellee

Vision Service Plan (VSP). We review the denial of a preliminary injunction for

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable James Dale Todd, Senior United States District Judge for the Western District of Tennessee, sitting by designation.

abuse of discretion. *See Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). We have jurisdiction under 28 U.S.C. § 1292(a)(1). Because the parties are familiar with the facts and procedural history, we do not restate them here except as necessary to explain our decision. We affirm.

The district court did not abuse its discretion in denying Aspex's request for injunctive relief. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). Aspex has failed to demonstrate a likelihood of success on the merits of each of its claims.

First, Aspex alleges that it entered into an enforceable implied-in-fact contract with VSP, which VSP breached when it decided to alter Aspex's in-network status. "An implied contract . . . in no less degree than an express contract, must be founded upon an ascertained agreement of the parties to perform it." *Zenith Ins. Co. v. Cozen O'Connor*, 55 Cal. Rptr. 3d 911, 920 (Ct. App. 2007) (alteration in original and internal quotation marks omitted). "[T]he very heart of this kind of agreement is an *intent* to promise." *Id.* (internal quotation marks omitted). The record in this case does not reveal any intent on the part of VSP to

promise Aspex that it would not alter their relationship or Aspex's in-network status so long as Aspex disclosed and updated its prices. Further, the record contains no facts demonstrating that VSP committed itself to continue in its relationship with Aspex for any definite duration. The agreement between Aspex and VSP appears to be one of indefinite duration, making it terminable at will of either party. *See Zimco Rests., Inc. v. Bartenders and Culinary Workers Union, Local 340, AFL-CIO*, 331 P.2d 789, 793 (Cal. Dist. Ct. App. 1958) ("The rule is well established in California" that "[a]s to contracts contemplating continuing performance for an indefinite time, the general rule is that such contracts are terminable at will by either party.").

Aspex argues that VSP has violated Aspex's right to fair procedure. Under California's common-law doctrine of fair procedure, "private entities may not expel or exclude qualified persons without acting in a manner that is substantively rational and procedurally fair." *Palm Med. Group, Inc. v. State Compensation Ins. Fund*, 74 Cal. Rptr. 3d 266, 274 (Ct. App. 2008). Despite VSP's obvious business interest in maintaining Aspex as a partner, the strenuous and litigious relationship between VSP and Aspex led VSP to decide that it was in its best interests to end its relationship with Aspex as an in-network vendor. VSP's conclusion, whether or not a wise exercise of sound business judgment, was not "arbitrary, capricious,

3

discriminatory, irrational or contrary to public policy." *Id.* at 280. In this instance, the right of fair procedure requires no more than "notice and an opportunity to be heard." *Id.* VSP notified Aspex of its intent to remove Aspex as an in-network provider well in advance of its decision to do so, and gave Aspex multiple opportunities to respond to and address VSP's concerns driving its decision.

Aspex also alleges that VSP violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, by engaging in conduct made unlawful under the Hobbs Act, 18 U.S.C. § 1951. Aspex contends that VSP's "threats" that it would remove Aspex as an in-network vendor if Aspex did not drop its patent infringements suits constituted extortion under the Hobbs Act. However, Aspex's mere fear of economic loss in the face of VSP's warnings does not give rise to a claim under the Hobbs Act. "[E]xtortion requires more than fear. . . . [t]he use of the fear must be 'wrongful.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939 (9th Cir. 2006). The Hobbs Act does not make actionable VSP's threats of altering Aspex's network status, at least to the extent that the basis for those threats "do not rise to the level of a sham," *id*. at 939-40, of which there is no evidence on this record. Accordingly, VSP was entitled to use some economic pressure falling within the scope of its legal rights in order to bring Aspex to the negotiating table. *See Rothman v. Vedder Park Management*, 912 F.2d 315, 318 (9th Cir. 1990) (holding

4

that a landlord's alleged threats that tenants who did not sign a lease would have to pay their own utility bills and be subject to future rent increases did not constitute a "wrongful use of force or fear").

Aspex also alleges that VSP's conduct is "unfair" under the UCL because it threatens an "incipient" antitrust violation and violates the "policy or spirit" of the antitrust laws. Aspex's claim fails because it has not offered "proof of some actual or threatened impact on competition." *Cel-Tech Commuc'ns, Inc. v. L.A. Cellular Tel. Co.,* 973 P.2d 527, 544 (Cal. 1999). The record reveals that VSP's motivation behind its disputed decision is to end the litigation with Aspex, not to monopolize the frames market or impede competition. Moreover, there are nearly 450 other companies who compete with Aspex and VSP's subsidiaries in the frames market. VSP's decision may be bad news for Aspex's business, but not necessarily for competition. *See id.* at 544 ("Injury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws."). Even assuming VSP's conduct was aimed at pushing Aspex out of the frames market entirely, any conclusion on this record that this result would diminish competition in the relevant market would be speculative.

Finally, Aspex alleges that VSP tortiously interefered with a prospective economic advantage of Aspex. "[A] plaintiff seeking to recover for alleged

5

interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful by some measure beyond the fact of the interference itself." *Della Penna v. Toyota Motor Sales, USA, Inc.*, 902 P.2d 740, 751 (Cal. 1995) (internal quotation marks omitted). Because Aspex has failed to show a likelihood of prevailing on the merits of any of its independent claims, Aspex necessarily fails to carry its burden on its tortious interference claim.

Having concluded that the district court did not abuse its discretion in finding that Aspex failed to demonstrate a likelihood of success on the merits of its claims, we need not address the remaining three factors of the preliminary injunction inquiry. *See Doe v. Reed*, 586 F.3d 671, 681 n.14 (9th Cir. 2009).

**AFFIRMED.**