181 Cal.App.3d 954 (1986)
226 Cal. Rptr. 532
EARL J. FOX et al., Plaintiffs and Appellants,
v.
HARRY POLLACK, Defendant and Respondent.
Docket No. A030330.
Court of Appeals of California, First District, Division Five.
May 30, 1986.
*957 COUNSEL
Cindy W. Frazier, Robert W. Lazzarini and Lazzarini & Frazier for Plaintiffs and Appellants.
Victoria B. Henley, Ronald E. Mallen, Lynn Flaisher and Long & Levit for Defendant and Respondent.
OPINION
HANING, J.
Plaintiffs/appellants Earl J. and Barbara L. Fox appeal a summary judgment in favor of defendant/respondent Harry Pollack, attorney at law, in appellants' action for legal malpractice and negligent misrepresentation. We are asked to determine whether an attorney owes a duty of professional care to an unrepresented party to a real estate exchange in which the attorney represents the opposite party. We hold that in the absence of contrary representations by the attorney, no such duty arises. We conclude that the trial court ruled correctly as a matter of law that respondent attorney owed no duty to nonclients in this situation.
This legal malpractice action arises out of a real estate exchange transaction wherein appellants exchanged parcels of real property with Dennis *958 and Tawana Bennett.[1] Appellants and the Bennetts originally entered into an oral agreement to exchange parcels of real property. Mr. Bennett then advised appellants that he would have his attorney, respondent herein, prepare the necessary documents and that he would bear all attorney fees, to which appellants agreed. Appellants' only contact with respondent was at a meeting in respondent's law offices on the date the exchange agreement was executed. Respondent prepared the agreement solely from information given to him by the Bennetts, whom respondent considered to be his clients. Appellants knew that respondent was the Bennetts' attorney; they had no prior contact with him; they had not furnished him any information concerning the exchange; respondent did not tell them he was acting as their attorney; they did not request any legal advice from respondent and respondent did not render any. By the same token, neither appellants nor respondent specifically recall respondent advising them to seek independent counsel, and there is no written notice or advice to such effect.[2] However, when appellants met at respondent's office with the Bennetts, respondent read the agreement to them out loud, gave them time to review it, asked periodically if they understood its terms and received their assurances that they did. Appellants and the Bennetts executed the exchange agreement at that time. Subsequently, respondent prepared a promissory note which the Bennetts executed in favor of appellants.
Appellants claim that neither the written agreement nor the note complied with their prior oral agreement with the Bennetts. They contend that an attorney-client relationship arose between them and respondent; that respondent breached a fiduciary duty to them by failing to advise them fully about the transaction, and that he negligently misrepresented the facts and details to them.
The rules for review of summary judgment are well known and require no repetition. (See, e.g., Empire West v. Southern California Gas Co. (1974) 12 Cal.3d 805, 808 [117 Cal. Rptr. 423, 528 P.2d 31]; 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 274 et seq.) Primary among them is the rule that summary judgment cannot be granted if triable issues of material fact exist, but in the absence of such must be granted if the moving party is entitled to judgment as a matter of law. (Code Civ. *959 Proc., § 437c, subd. (c).) (1) In reviewing the affidavits supporting and opposing the motion the court considers only evidentiary facts, not ultimate facts or conclusions. (6 Witkin, op. cit. supra, § 288.)
Appellants advance alternative theories of recovery: the first is based on the existence of an attorney-client relationship, and the second on the duty of an attorney to nonclients. (2) To state the obvious, an attorney's duty to his or her client depends on the existence of an attorney-client relationship. If that relationship does not exist, the fiduciary duty to a client does not arise. (Shelly v. Hansen (1966) 244 Cal. App.2d 210, 214 [53 Cal. Rptr. 20], disapproved on different grounds in Neel v. Magana, Olney, Levy, Cathcart & Gelfand (1971) 6 Cal.3d 176, 190, fn. 29 [98 Cal. Rptr. 837, 491 P.2d 421].) Except for those situations where an attorney is appointed by the court, the attorney-client relationship is created by some form of contract, express or implied, formal or informal. (See, e.g., Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra, at p. 181; Purdy v. Pacific Automobile Ins. Co. (1984) 157 Cal. App.3d 59, 75 [203 Cal. Rptr. 524]; Houston Gen. Ins. Co. v. Superior Court (1980) 108 Cal. App.3d 958, 964 [166 Cal. Rptr. 904]; Miller v. Metzinger (1979) 91 Cal. App.3d 31, 39-40 [154 Cal. Rptr. 22]; Neblett v. Getty (1937) 20 Cal. App.2d 65, 68-69 [66 P.2d 473]; Brydonjack v. Rieck (1935) 5 Cal. App.2d 219, 222-223 [42 P.2d 336]; 1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 52.)
(3) The affidavits supporting and opposing the motion for summary judgment contain no allegations of evidentiary facts, nor any facts permitting any reasonable inferences from which the existence of an attorney-client relationship between appellants and respondent could be found. Appellants did not hire or retain respondent; they knew he was the Bennetts' attorney; they did not pay him for his services; they did not seek his legal advice; respondent did not render any legal advice to them; and they had no contact with respondent other than the single occasion when they visited his office for the sole purpose of executing the exchange agreement.
Appellants did allege that they "thought" respondent was representing their interests because he was an attorney. However, they allege no evidentiary facts from which such a conclusion could reasonably be drawn. Their states of mind, unless reasonably induced by representations or conduct of respondent, are not sufficient to create the attorney-client relationship; they cannot establish it unilaterally. (See, e.g., Houston Gen. Ins. Co. v. Superior Court, supra, 108 Cal. App.3d at pp. 962-963; Connelly v. Wolf, Block, Schorr and Solis-Cohen (E.D.Pa. 1978) 463 F. Supp. 914, 919.) Consequently, as to the causes of action based on breach of a fiduciary duty or other duty arising from an attorney-client relationship, the summary judgment was properly granted.
*960 (4a) Appellants contend, however, that respondent owed them a duty of professional care even if they were not his clients. (5) With certain exceptions, an attorney has no obligation to a nonclient for the consequences of professional negligence  that is, the attorney is not burdened with any duty toward nonclients merely because of his or her status as an attorney.[3] The existence of such a duty is a question of law dependent upon "a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances. [Citations.]" (Goodman v. Kennedy (1976) 18 Cal.3d 335, 342 [134 Cal. Rptr. 375, 556 P.2d 737]; Banerian v. O'Malley (1974) 42 Cal. App.3d 604, 612 [116 Cal. Rptr. 919]; Starr v. Mooslin (1971) 14 Cal. App.3d 988, 998 [92 Cal. Rptr. 583].) The imposition of a duty of professional care toward nonclients has generally been confined to those situations wherein the nonclient was an intended beneficiary of the attorney's services, or where it was reasonably foreseeable that negligent service or advice to or on behalf of the client could cause harm to others. "[T]he determination whether in a specific case the [attorney] will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the [attorney's] conduct and the injury, and the policy of preventing future harm. [Citation.]" (Lucas v. Hamm (1961) 56 Cal.2d 583, 588 [15 Cal. Rptr. 821, 364 P.2d 685]; Heyer v. Flaig (1969) 70 Cal.2d 223, 227 [74 Cal. Rptr. 225, 449 P.2d 161]; Mason v. Levy & Van Bourg (1978) 77 Cal. App.3d 60, 67-68 [143 Cal. Rptr. 389].)
(4b) In Lucas the Supreme Court followed its earlier lead in Biakanja v. Irving (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358] abandoning privity of contract as a basis for liability founded on professional negligence, and held that beneficiaries under a will could maintain a cause of action against the attorney whose negligence in drafting the will caused a reduction in the share they would have received had the will been properly drawn. Lucas permitted them to recover as third party beneficiaries of the attorney-client contract between the attorney and the testator. (6) An attorney representing a trustee also "assumes a relationship with the beneficiary akin to that between trustee and beneficiary" (Morales v. Field, DeGoff, Huppert & MacGowan (1979) 99 Cal. App.3d 307, 316 [160 Cal. Rptr. 239]; Bucquet v. Livingston (1976) 57 Cal. App.3d 914, 921-922 [129 Cal. Rptr. 514]), and thus acquires a duty of care toward the beneficiaries.
*961 (4c) Following Lucas, attorneys acting for their clients have been held liable to third parties in other transactions which were intended to directly benefit the third party, or in which potential harm to the third party from professional negligence was reasonably foreseeable. Illustrative are Donald v. Garry (1971) 19 Cal. App.3d 769 [97 Cal. Rptr. 191, 45 A.L.R.3d 1177], wherein an attorney for a collection agency who allowed a complaint to be dismissed for lack of prosecution was held liable to the creditor who assigned the claim to the agency for collection. (7) Also, attorneys hired by their primary clients to represent third parties owe a fiduciary duty to the third party they are retained to protect. (Lysick v. Walcom (1968) 258 Cal. App.2d 136 [65 Cal. Rptr. 406, 28 A.L.R.3d 368] [duty of attorney hired by insurance carrier to defend the insured under the insurance policy].) (4d) In Roberts v. Ball, Hunt, Hart, Brown & Baerwitz (1976) 57 Cal. App.3d 104 [128 Cal. Rptr. 901], it was held that a law firm could be liable to a third party lender for negligent misrepresentation in furnishing a letter containing incorrect and misleading data to its client, knowing the letter would be shown to prospective lenders in order to obtain a loan.
(8) However, an attorney has no duty to protect the interests of an adverse party (Omega Video Inc. v. Superior Court (1983) 146 Cal. App.3d 470, 480-481 [194 Cal. Rptr. 574]; Morales v. Field, DeGoff, Huppert & MacGowan, supra, 99 Cal. App.3d at p. 318; Parnell v. Smart (1977) 66 Cal. App.3d 833, 837-838 [136 Cal. Rptr. 246]; Norton v. Hines (1975) 49 Cal. App.3d 917, 921 [123 Cal. Rptr. 237]) for the obvious reasons that the adverse party is not the intended beneficiary of the attorney's services, and that the attorney's undivided loyalty belongs to the client.[4] (See, e.g., Goodman v. Kennedy, supra, 18 Cal.3d at p. 344; 1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 95 et seq.) The same principles apply to transactions wherein the nonclients deal at arm's length with the attorney's clients. Goodman resolved "the legal question of whether or under what circumstances an attorney's duty of care in giving legal advice to a client extends to persons with whom the client in acting upon the advice deals wholly at arm's length.... [Attorneys have] no such duty in the absence of any showing that the legal advice was foreseeably transmitted to or relied upon by [the nonclients] or that [the nonclients] were intended beneficiaries of a transaction to which the advice pertained." (Id., 18 Cal.3d at p. 339.)
(4e) Appellants contend that even though respondent attorney represented the other parties to the transaction, he nevertheless had a duty to inquire into appellants' circumstances and advise them concerning their *962 participation therein. We disagree. The effect of such a duty on respondent would be the eradication of confidentiality (Bus. & Prof. Code, § 6068, subd. (e); Evid. Code, § 950 et seq.), the creation of a conflict of interest (rules 4-101, 5-101, 5-102, Rules Prof. Conduct) and the consequent destruction of the attorney-client relationship between respondent and his clients. The strong public policy in maintaining and enforcing the fidelity and duty of the attorney toward the client militates against the imposition of a duty to nonclients under these circumstances. (See, e.g., Goodman v. Kennedy, supra, 18 Cal.3d at p. 344; Held v. Arant (1977) 67 Cal. App.3d 748, 752-753 [134 Cal. Rptr. 422]; Tool Research & Engineering Corp. v. Henigson, supra, 46 Cal. App.3d at p. 683.)
Due to the absence of any facts supporting a duty of professional care toward nonclients, we conclude the trial court correctly granted summary judgment on this theory as well.
(9a) As to appellants' cause of action for negligent misrepresentation, Civil Code section 1709 provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Civil Code section 1710 defines deceit as, inter alia, "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true...." (10) Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 480-482.)
(9b) Appellants' complaint alleges that the Bennetts orally agreed that in addition to exchanging properties, they would provide appellants with a promissory note secured by the property the Bennetts were receiving, and that such note would correspond in amount, amortization payments and interest with the current loan on the property which the Bennetts were conveying to appellants. The gravamen of their action is that, contrary to their oral agreement with the Bennetts, the note was unsecured, that the monthly payments were insufficient to amortize it properly and that the interest rate did not correspond with the interest rate on the current note against the property.
The uncontradicted facts establish that the written agreement executed by appellants contained the following paragraph: "Bennett agrees to execute a promissory note, in conjunction with this exchange, with [appellants] as *963 payee[s] on the note, for the amount of the loan outstanding on [the subject property] as of October 1, 1979. The interest rate shall be the same as that provided for in the promissory note existing on [the property]. The monthly payments on the promissory note from Bennett to [appellants] shall be $369.00. This promissory note will not be secured." It is also uncontradicted that respondent read the agreement out loud to appellants and asked them if they understood its terms. They replied that they did, and executed the agreement without making any inquiries of respondent or the Bennetts. When appellants later received the promissory note it complied with the terms of their written agreement except, as it was later discovered, that the interest rate varied from that of the former note. However, appellants accepted the note and the properties were exchanged.
Respondent prepared the agreement and the note solely from information he received from his clients, the Bennetts. The affidavits opposing the motion for summary judgment contain no facts indicating that respondent's reliance on the information he received from his clients and from which he prepared the agreement and note was unreasonable, that he had any basis for not believing it, or that any assertion he made was not warranted by the information in his possession. In short, the record does not contain any facts indicating that respondent negligently misrepresented any material fact.
Affirmed.
Low, P.J., and King, J., concurred.
A petition for a rehearing was denied June 24, 1986, and appellants' petition for review by the Supreme Court was denied September 10, 1986.
NOTES
[1] The Bennetts were also named as defendants below, but settled with appellants.
[2] Respondent's affidavit in support of his motion for summary judgment states that he normally renders such advice in such situations, but could not recall specifically doing so in this case. Attorneys in these circumstances are well advised to place a disclaimer in writing. A simple clause in the agreement stating that it was prepared by the attorney for the opposite party acting solely on behalf of that party's interest, and advising the other parties to seek independent legal counsel to protect their own interest, might have prevented this action from being filed.
[3] We emphasize that we are referring only to liability based on ordinary negligence, and not liability based on fraud, conspiracy or intentional torts. Appellants do not advance such theories, and the record does not support such.
[4] An exception is an action for malicious prosecution, but successful maintenance of such an action against an attorney requires wrongful conduct beyond mere negligence. (Norton v. Hines, supra, 49 Cal. App.3d 917; Tool Research & Engineering Corp. v. Henigson (1975) 46 Cal. App.3d 675 [120 Cal. Rptr. 291]; see fn. 3. ante.)