951 F.2d 361
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
MGIC INDEMNITY CORPORATION, Plaintiff-Appellant,
v.
Curtis Donald MOORE, Defendant,
and
Gerald Thompson; Pennington Appraisal Services; Capital
Accumulation Systems; John D. Butterfield; Larry
D. Mikelson; Karen L. Simpson; Walter
Arrington, Defendants-Appellees,
and
John R. Pennington; Cas Financial Services Inc.,
Defendants-Third-party-Plaintiffs-Appellees,
and
Sko-Fed Mortgage Corporation, Third-party-Defendant-Appellee.
MGIC INDEMNITY CORPORATION, Plaintiff-Appellant,
v.
Curtis Donald Moore; Cas Financial Services, Inc.; John D.
Butterfield; Larry D. Mikelson; Capital
Accumulation Systems; Karen L. Simpson,
Defendants-Appellants.
 Nos. 89-55709, 90-56012.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1991.
Decided Dec. 27, 1991.
 
 Before SNEED, BEEZER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This California mortgage guaranty insurance case addresses the implications of a fraudulent insurance application on the relationship between the insured/lender, who was not the defrauding party, and the insurer. MGIC Indemnity Corporation (MGIC) appeals a judgment dismissing on the merits its action in No. 89-55709.[1] It also appeals the district court's award of costs in No. 90-56012. We have jurisdiction. We affirm the district court's judgment and award, except that we remand to the district court the limited question whether Gerald E. Thompson has any liability to MGIC.
 
 
 3
 * Larry D. Mikelson and John D. Butterfield were the owners and principal executives of Capital Accumulation Systems and CAS Financial Services, Inc. (collectively CAS), a business enterprise that packaged second trust deed loans secured by real estate in California. CAS obtained for Sko-Fed Mortgage Corporation a $5,000,000 second trust deed purchase commitment from First Federal Savings and Loan. Sko-Fed assigned the commitment to CAS. CAS delivered completed loan packages, including mortgage guaranty insurance from MGIC, to Sko-Fed, which then funded the loans, retained the servicing and sold the loans to First Federal.
 
 
 4
 MGIC issued an Equity Loan Insurance Master Policy to CAS on November 11, 1981. The policy and its related Users Guide set forth the procedures CAS had to follow to secure insurance for individual loans. Karen L. Simpson, who was employed by CAS, ensured that loan packages complied with MGIC's requirements.
 
 
 5
 Thompson, dba One Stop Financing, in concert with purported borrower Curtis D. Moore, presented CAS with the fraudulent loan package undergirding this case. Mikelson first met Thompson approximately one month before the Moore loan funded. Mikelson outlined general loan availability parameters and indicated CAS would pay a finder's fee for any loans Thompson submitted that were ultimately funded. About a week later Thompson submitted the fraudulent loan package. Simpson processed the loan package for CAS, including sending a verification of employment to Moore's employer and requesting certain additional documentation from Thompson. MGIC eventually committed to provide $198,700 of second trust deed insurance coverage on the loan.
 
 
 6
 Sko-Fed made a claim against MGIC under the policy as CAS's assignee following Moore's one-payment default. MGIC paid Sko-Fed $254,754.49. It is unclear whether MGIC made this payment pursuant to contractual obligation or out of a concern for preserving its business relationship with Sko-Fed. MGIC then brought this action seeking $181,105.89, its net loss after disposing of the real estate security. Whether Thompson and Moore committed fraud is not at issue.
 
 
 7
 Unless the circumstances require separate identification, we refer only to defendant CAS because no other defendants are liable if CAS is not liable.
 
 II
 
 8
 MGIC seeks to hold CAS liable under Cal.Ins.Code § 357 (West 1972) (responsibility for representations).[2] CAS submitted to MGIC in its whole extent information provided to CAS by Thompson. CAS thus has no responsiblity for the truth of the information, unless Thompson was CAS's agent, whose duty it was to give the information. MGIC asserts the district court erred when it specifically found that Thompson was not CAS's agent.[3]
 
 
 9
 "The existence of agency is a question of fact for the trial court." Burr v. Capital Reserve Corp., 71 Cal.2d 983, 458 P.2d 185, 193, 80 Cal.Rptr. 345 (1969). The law presumes that a party acts for himself, and the party asserting an agency relationship bears the burden of proving the agency. K. King & G. Shuler Corp. v. King, 259 Cal.App.2d 383, 66 Cal.Rptr. 330, 336-37 (1968), disapproved on other grounds, Liodas v. Sahadi, 19 Cal.3d 278, 562 P.2d 316, 323, 137 Cal.Rptr. 635 (1977). A mere conflict in evidence does not justify overturning the trial court's determination. When the facts can be viewed in only one way, however, a factual question becomes a question of law. United States v. McConney, 728 F.2d 1195, 1200-01 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984).
 
 
 10
 In Burr, the defendant equipment manufacturer dealt with brokers who matched equipment lessees with manufacturers who sought to lease equipment. The manufacturer paid the brokers a commission for their services. The manufacturer had no prior dealings with the plaintiff lessee. The California Supreme Court held that this evidence supported the trial court's finding that there was no actual or ostensible agency, even though the brokers were entitled to commissions. Burr, 458 P.2d at 193-94.
 
 
 11
 Thompson did business as "One-Stop Loan and Mortgage." He matched lenders with mortgagors for a commission. Burr rejected the notion that receipt of a commission conclusively establishes an agency relationship. The similarities between the CAS-Thompson relationship and the one in Burr make the issue of Thompson's agency a factual question, not a question of law. Compare Burr, 458 P.2d at 193 (factual question) with Metropolitan Life Ins. Co. v. State Bd. of Educ., 32 Cal.2d 649, 652 P.2d 426, 431, 186 Cal.Rptr. 578 (1982) (legal question). We uphold the district court's finding of no agency relationship because the record does not indicate that it is clearly erroneous. United States v. Silverman, 861 F.2d 571, 576-77 (9th Cir.1988). Because Thompson was not CAS's agent, CAS has no liability to MGIC under section 357.
 
 III
 
 12
 Because Thompson was not CAS's agent, his fraud cannot be attributed to CAS. Whether CAS committed fraud is primarily a factual determination subject to the clearly erroneous standard of review. See Northwest Acceptance Corp. v. Lynnwood Equip., 841 F.2d 918, 922 (9th Cir.1988). We pay special deference to a trial court's credibility findings. Anderson v. City of Bessemer City, 470 U.S. 564, 573-75 (1985). The district court found utterly no evidence of conspiracy among the various defendants, and specifically found credible Mikelson's testimony that incompetence, not fraud, explained CAS's disastrous underwriting results. We see no error that would cause us to disturb those findings.
 
 
 13
 MGIC next argues that CAS is liable for negligent misrepresentation.[4] The elements of negligent misrepresentation[5] are set forth concisely in Fox v. Pollack, 181 Cal.App.3d 954, 226 Cal.Rptr. 532, 536-37 (1986). For MGIC to succeed on this theory CAS must have made material misrepresentations to MGIC without any reasonable grounds for believing them to be true. Fox, 226 Cal.Rptr. at 537.[6]
 
 
 14
 The district court specifically found that "CAS had reasonable grounds to believe that the loan and insurance applications contained accurate information." ER 500 at 3 (Finding of Fact 17). CAS received no negative signals while performing the verifications required by MGIC's manuals. The appraiser was ostensibly reputable, and Mikelson did not know that the subject property had a third encumbrance until after default. We uphold Finding of Fact 17 because the record does not indicate that it is clearly erroneous. Silverman, 861 F.2d at 576-77. Because CAS had reasonable grounds, MGIC's negligent misrepresentation claim fails.
 
 IV
 
 15
 MGIC also argues that CAS breached its affirmative investigative duty to ensure the accuracy of the information in the insurance application. This amounts to a claim of breach of contract. The duty that MGIC would have this court impose has three potential sources: contract, law, or usage of trade.
 
 
 16
 We review facts used to interpret contracts under the clearly erroneous standard; we review principles of contract interpretation de novo. L.K. Comstock & Co. v. United Eng'rs & Constructors, 880 F.2d 219, 221 (9th Cir.1989). California construes insurance contracts in favor of coverage and resolves any reasonable doubts about the meaning of contract terms against the insurer. Crane v. State Farm Fire & Casualty Co., 5 Cal.3d 112, 485 P.2d 1129, 1130, 95 Cal.Rptr. 513 (1971). "It is not permissible to impute an unusual meaning to language used in [an insurance contract.]" Certain Underwriters at Lloyds v. Engs Motor Truck Co., 135 Cal.App.3d 831, 185 Cal.Rptr. 613, 614 (1982).
 
 
 17
 In the insuring agreement between MGIC and CAS, MGIC agreed to pay losses sustained by reason of default on insured loans. MGIC made this promise "in reliance upon the statements made in the Application submitted by the Insured." ER 339-85 at 2 (Equity Loan Insurance Master Policy). The policy does not state that CAS attests to the truth of all information submitted. MGIC offers no reference as to where in its Users Guide it imposed on CAS the duty to attest to the truth of all information submitted. Our de novo review of the contract reveals no affirmative investigative duty that CAS did not perform.[7]
 
 
 18
 We explained supra Part II why Cal.Ins.Code § 357 does not impose liability on CAS. Most of the other statutes that MGIC advances as imposing by law an affirmative investigative duty merely indicate when an insurer may rescind a contract.[8] MGIC has no concealment action for damages, see Cal.Ins.Code § 330 (West 1972), because CAS committed no fraud or negligent misrepresentation. See supra Part III. California does presume, however, that each party to an insurance contract knows "[a]ll the general usages of trade." Cal.Ins.Code § 335(b) (West 1972).
 
 
 19
 A known usage of trade forms a part of the parties' contract absent an expression to the contrary. Guipre v. Kurt Hitke & Co., 109 Cal.App.2d 7, 240 P.2d 312, 316-17 (1952); see, e.g., Skyways Aircraft Ferrying Serv. v. Stanton, 242 Cal.App.2d 272, 51 Cal.Rptr. 352, 361-62 (1966) (need to renew insurance policy before expiration date). Usage may supply a deficiency in the contract or aid in interpretation, so long as it does not alter or vary terms of the contract. Guipre, 240 P.2d at 316-17; accord Peiser v. Mettler, 50 Cal.2d 594, 328 P.2d 953, 961-62 (1958).
 
 
 20
 MGIC asserts that CAS's cursory review of the information in the Moore application fell below the norm expected in the insurance industry. We previously noted that the terms of the contract impose no affirmative investigative duty on CAS that it did not perform. MGIC's argument must be that the more stringent industry norm supplies a deficiency in the contract. Supplying this deficiency conflicts with the policy of resolving reasonable doubts about the meaning of contract terms against the insurer. See Crane, 485 P.2d at 1130. In addition, the district court did not find credible the evidence of an affirmative investigative duty presented by MGIC. Lacking strong evidence of a usage of trade, we hold that MGIC's alleged usage of trade does not supply a deficiency in the contract and resolve the meaning of the insuring agreement against MGIC. CAS had no affirmative investigative duties beyond those set out in the insurance contract and Users Guide, which it performed. MGIC has no claim for breach of contract.
 
 V
 
 21
 MGIC argues that defendants-appellees filed their cost bill late under Local Rule 16.3, which gives a prevailing party "fifteen (15) days after entry of judgment to file and serve a Bill of Costs." A judgment is effective when entered in accordance with Fed.R.Civ.P. 79(a). Fed.R.Civ.P. 58. A district court possesses the power to alter or amend a judgment after its entry. Fed.R.Civ.P. 59, Advisory Comm. Notes, 1946 Amend., Note to Subdivision (e). Such amendment provides an opportunity to alter the effectiveness of a judgment. We interpret the phrase "entry of judgment" in Local Rule 16.3 to mean when the judgment becomes effective--that is, after the district court rules on all post-trial motions. See United States v. Ibarra, 112 S.Ct. 4, 6 (1991) (otherwise final decision of district court not final until it rules on motion for reconsideration).
 
 
 22
 By its motion to alter or amend, the moving party implicitly seeks to reverse the district court's ruling on costs. Local Rule 16.3 recognizes the non-moving party's interest in finality before engaging his attorney to prepare a cost bill by requiring a cost bill fifteen days after entry of judgment, five days after the deadline for filing post-trial motions under the Federal Rules. Cf. Independent Iron Works v. US Steel Corp., 322 F.2d 656, 675-76 (9th Cir.) (emphasizing finality), cert. denied, 375 U.S. 922 (1963). The losing party cannot impose upon the prevailing party the burdens of victory while simultaneously subjecting that status to the risk of reversal. Defendants-appellees recover their costs because they filed on May 17, 1989, well within fifteen days of May 8, 1989, when the district court denied MGIC's post-trial motions.
 
 VI
 
 23
 We note that default was entered against defendant Thompson on July 18, 1984. The district court's judgment orders "that Plaintiff MGIC Indemnity Corporation take nothing, that the action be dismissed on the merits." In light of the default against Thompson, we remand to the district court the limited question whether Thompson has any liability to MGIC.
 
 VII
 
 24
 The district court's judgment and award of costs are AFFIRMED. The limited question of Thompson's liability is REMANDED. Costs to appellees, except to Thompson, if he has any.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The district court's sanction of MGIC's trial attorneys is the subject of a separate opinion
 
 
 [2]
 The full text of that section:
 When an insured has no personal knowledge of a fact, he may nevertheless repeat information which he has upon the subject, and which he believes to be true, with the explanation that he does so on the information of others; or he may submit the information, in its whole extent, to the insurer. In neither case is he responsible for its truth, unless it proceeds from an agent of the insured, whose duty it is to give the information.
 Cal.Ins.Code § 357 (West 1972).
 
 
 [3]
 Apparently the district court found Thompson to be a non-agent independent contractor. See Restatement (Second) of Agency § 14N cmt. b, at 80-81 (1957)
 
 
 [4]
 This action derives from Cal.Civ.Code §§ 1572(2) (actual fraud), 1709 (deceit; damages), 1710 (deceit defined) (West 1972). It has been categorized both as a form of actual fraud, see Gold v. Los Angeles Democratic League, 49 Cal.App.3d 365, 122 Cal.Rptr. 732, 738 (1975), and as a form of deceit. See Grenell v. City of Hermosa Beach, 103 Cal.App.3d 864, 163 Cal.Rptr. 315, 319 (1980)
 
 
 [5]
 We address only one element here. Others, most probably present, include: (1) misrepresentation of material fact, (2) intent that plaintiff rely on misrepresentation, (3) ignorance of truth and justifiable reliance by plaintiff. Fox v. Pollack, 181 Cal.App.3d 954, 226 Cal.Rptr. 532, 536-37 (1986). We do not reach the element of damages because MGIC makes out no claim giving it a right of recovery against CAS
 
 
 [6]
 Accord Walters v. Marler, 83 Cal.App.3d 1, 147 Cal.Rptr. 655, 664-65 (1978), disapproved on other grounds, Gray v. Don Miller & Assocs., 35 Cal.3d 498, 674 P.2d 253, 198 Cal.Rptr. 551 (1984); Clar v. Board of Trade, 164 Cal.App.2d 636, 331 P.2d 89, 94-95 (1958). In its reply brief dated July 3, 1991, MGIC improperly makes citation to Sefton v. Pasadena Waldorf School, 219 Cal.App.3d 359, 268 Cal.Rptr. 335, ordered depublished, No. S015447, 1990 Cal.LEXIS 2640 (June 21, 1990)
 
 
 [7]
 Because neither the policy nor the Users Guide imposes such a duty, we do not proceed to contract integration issues
 
 
 [8]
 Cal.Ins.Code §§ 331, 338, 358, 359 (West 1972)