12-4381-cv
CAC Group, Inc. v. Maxim Group, LLC, et al.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of May, two thousand thirteen.

PRESENT:
> RALPH K. WINTER,
> GUIDO CALABRESI,
> GERARD E. LYNCH,
>     *Circuit Judges.*

_____

CAC GROUP INC.,

      *Plaintiff-Appellant*,

    v.                                                                No. 12-4381-cv

MAXIM GROUP LLC, a New York limited
liability company, EDWARD L. ROSE, an
individual, ARAMID ENTERTAINMENT FUND
LIMITED, a Cayman Islands company,

      *Defendants-Appellees*,

JOHN DOES 1 through 40, inclusive,

      *Defendants*.

_____

FOR APPELLANT:                                     JOSHUA R. FURMAN, Joshua R.
                                                   Furman Law Corp., Los Angeles,
                                                   California.


FOR APPELLEES MAXIM GRP. LLC & ROSE:    DANIEL N. JOCELYN (Andrew B.
                                                   Kratenstein, *on the brief*), McDermott
                                                   Will & Emery, New York, New York.

FOR APPELLEE ARAMID ENTM'T FUND LTD:    CLAUDE G. SZYFER (Daniel A.
                                                   Rozansky, *on the brief*), Stroock &
                                                   Stroock & Lavan LLP, New York, New
                                                   York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Katherine B. Forrest, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

CAC Group Inc. ("CAC") appeals from the district court's judgment granting the defendants' motion to dismiss its amended complaint for breach of contract against Maxim Group LLC ("Maxim"); negligent misrepresentation against Maxim and its vice president and general counsel, Edward L. Rose ("Rose"); and tortious interference with contract against Aramid Entertainment Fund Ltd. ("Aramid"). We assume the parties' familiarity with the underlying facts and procedural history.

We review the grant of a motion to dismiss de novo, accepting all factual allegations as true and drawing all legal inferences in the plaintiff's favor. Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although factual allegations in

2

the complaint are assumed to be true, this tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The parties agree that New York law governs CAC's breach of contract and tortious interference claims. To determine whether the parties intended to be bound prior to executing the contemplated written purchase agreement, we consider four factors: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985). In applying these factors, we are mindful of "a strong presumption against finding binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents." Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 73 (2d Cir. 1989) (internal quotation marks omitted).

In light of the foregoing principles, we conclude that the facts alleged in the amended complaint, and the documents incorporated therein, establish that CAC and Maxim did not intend to be bound prior to execution of the purchase agreement. According to the complaint, in a telephone conversation held on December 29, 2011, "CAC and Maxim came to terms on [CAC's purchase] of Maxim's interest in [a promissory] note" issued by non-party Gerova Financial Group, Ltd. ("Gerova"). Later that day, CAC's attorney sent an email to Rose stating that CAC had agreed to purchase the note for $250,000, but he provided no other details. He instead wrote that CAC was preparing "the deal doc[ument]s," including a purchase agreement

3

to be executed by CAC and Maxim.  Rose did not respond for several days and then did so only to inquire as to how "the documents [were] coming along."  CAC's counsel responded that he was "still waiting for client approval" on the draft documents, but he forwarded them to Rose "subject to reservation [of the] right to edit subject to input from Gerova and from CAC."  Rose replied, "This needs to be done by Friday," meaning January 6, 2012.  CAC's counsel responded by soliciting Rose's comments on the draft, which Rose said he would provide the following day.  On January 12, 2012, Maxim informed CAC that it would not execute the purchase agreement or otherwise sell the promissory note to CAC at the negotiated price.

"Although neither party expressly reserved the right not to be bound prior to the execution of a document, language in [their] correspondence does reveal such an intent." Winston, 777 F.2d at 81.  The email exchange establishes that both parties understood that the "deal" would be effectuated by "documents," the details of which were still to be settled.  CAC's counsel acknowledged that his client had yet to approve the terms of the agreement, and Rose suggested that the agreement might not be consummated if the documents were not signed within a few days.  The correspondence – including a "reference[] to the possibility that negotiations might fail and the reference to a binding sales agreement to be completed at some future date – shows that [the parties] did not intend to be bound," Arcadian Phosphates, 884 F.2d at 72.  This conclusion is reinforced by language in the draft agreement indicating "that the parties contemplated the moment of signing as the point when the [contract] would become binding," Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 324 (2d Cir. 1997).  The terms of the agreement are introduced by a clause that reads: "*NOW*, THEREFORE, in consideration of the covenants contained herein, and for other good and valuable consideration,

4

the receipt and sufficiency of which are *hereby* recognized, Purchaser and Seller *agree* as follows . . .” (emphasis added). The terms that follow include a provision that Maxim would, “[c]oncurrently with the execution and delivery of this Agreement . . . also execute and deliver to [CAC]” an assignment of claims form, which is incorporated into the agreement and provides that Maxim “*hereby* . . . sells and transfers to CAC” the relevant assets (emphasis added). This language indicates that the parties understood that the written agreement would effectuate a binding contract and not merely memorialize a contract that had already been entered into. See id. Furthermore, the draft agreement contains a merger clause, which is “persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement,” id. “Thus, the contract drafts, combined with the parties’ other written communications, conclusively establish a mutual intent not to be bound prior to execution of the formal documents . . . .” Reprosystem, B.V. v. SCM Corp., 727 F.2d 257, 262 (2d Cir. 1984).

The context of the parties’ negotiations further supports our conclusion that they did not intend to be bound absent a written agreement. As CAC acknowledges, “[i]t is not reasonably disputable that a contract concerning substantial amounts of money or complex matters between sophisticated businesses is usually committed to writing. Error cannot be assigned to the trial court’s finding that a writing should be anticipated in this case based on the fact that CAC was to pay $250,000 by itself.” (Appellant Br. 28.) Moreover, the promissory note that was to be the subject of the parties’ agreement states that its terms, including a provision barring assignment, can be modified “only by an agreement in writing intended for that specific purpose.” The email exchange between CAC and Maxim, as well as the draft purchase agreement, reflect the parties’ expectation that Gerova would execute an agreement with Maxim, consenting to the assignment,

5

at the same time that Maxim and CAC executed the draft purchase agreement. Without this simultaneous agreement between Gerova and Maxim, any agreement between CAC and Maxim would be without effect. This context weighs heavily against concluding that CAC and Maxim meant to be bound by their oral communications and emails prior to execution of the draft purchase agreement.

CAC argues that there was partial performance under the alleged contract, which evidences the parties' intent to be bound even without an executed purchase agreement. Specifically, CAC claims that it tendered payment in accordance with the payment term reflected in its counsel's December 29 email. However, it also acknowledges that Maxim refused to accept the offered payment. CAC cannot rely on its own effort to perform as an indication that Maxim intended to be bound. Partial performance is a "factor of major significance" when "one party has partially performed, *and that performance has been accepted by the party disclaiming the contract*." R.G. Grp., Inc. v. Horn & Hardart Co., 751 F.2d 69, 75 (2d Cir. 1984) (emphasis added).

Accordingly, none of the four Winston factors weighs in CAC's favor. Rather, CAC's amended complaint and the documents it incorporates establish that CAC "should have known that [Maxim] did not intend to be bound before the final contract was signed," Arcadian Phosphates, 884 F.2d at 73 (internal quotation marks and brackets omitted).[1] Accordingly, the district court properly dismissed Maxim's breach of contract claims.

---

[1] Because the pleadings and attached documents establish that Maxim did not evince an intent to be bound in any way prior to execution of the purchase agreement, they also do not plausibly allege the existence of a "Type II" preliminary contract. See Brown v. Cara, 420 F.3d 148, 157 (2d Cir. 2005) (a preliminary agreement is enforceable "only to the extent that the parties intend it to be binding").

Given the absence of a contract, dismissal of CAC's claim against Aramid for tortious interference was also appropriate. "Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" Kirch v. Liberty Media Corp., 449 F.3d 388, 401-02 (2d Cir. 2006), quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996). Because CAC has not pled facts establishing the existence or breach of a contract, it has failed to state a claim for tortious interference.

With respect to CAC's claim against Rose and Maxim for negligent misrepresentation, the parties dispute whether New York or California law applies. They also dispute whether the heightened pleading requirements of Rule 9(b) apply in place of Rule 8's more lenient standard. We need not resolve either dispute, as the claim was properly dismissed under any standard. Under both New York and California law, to state a claim for negligent misrepresentation, a plaintiff must allege, inter alia, that the defendant misrepresented a material fact, and the plaintiff reasonably relied on that fact. See Anschutz Corp. v. Merrill Lynch & Co., 690 F.3d 98, 114 (2d Cir. 2012) (New York law); Fox v. Pollack, 181 Cal. App. 3d 954, 962 (1st Dist. 1986) (California law). CAC alleges that Rose "made representations to CAC that he was authorized to enter into the oral and Written Agreement(s) alleged herein on behalf of Maxim and that Maxim, by and through his authority, did in fact enter into the oral and Written Agreement(s)." Despite the conclusory allegation that Maxim entered into an agreement, as discussed above, the pleadings do not plausibly allege that Rose or Maxim represented to CAC that Maxim had

7

entered into any agreement. They instead establish that CAC could not reasonably have believed that a binding agreement existed before execution of the written contract. Accordingly, CAC failed to state a claim for negligent misrepresentation.

Finally, CAC argues that the district court erred by dismissing its claims with prejudice, without affording it an opportunity to amend. "We review the denial of leave to amend for abuse of discretion." Metz v. U.S. Life Ins. Co., 662 F.3d 600, 603 (2d Cir. 2011). CAC does not identify additional factual allegations that it would make if allowed to amend its complaint. It supported its request for leave to amend in the district court by referencing documents that it argued established Gerova's willingness to consent to the assignment and Aramid's knowledge of an agreement between Maxim and CAC. No additional allegations along these lines would address the deficiencies in CAC's complaint. We therefore conclude that the district court did not abuse its discretion when it denied CAC leave to amend. See id.

We have considered all of CAC's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8